IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| STEVEN MOSHLAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:04cv1365 |
| ALLIED VAN LINES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff sued defendant, a common carrier, under the Carmack Amendment, 49 U.S.C. § 14706, for damages incurred during and after an interstate move. The court tried the matter without a jury and took it under advisement. The following are the court's findings of fact and conclusions of law.

Steven Moshlak ("plaintiff") is a resident of this district. Allied Van Lines, Inc. ("defendant") is an interstate motor carrier that transports household goods pursuant to issued bills of lading and filed tariffs.

On July 6, 2002, plaintiff signed a bill of lading on defendant's standard form for the interstate shipment of his household goods from Colorado to Virginia. Plaintiff's household goods were packed by employees of Bailey's Moving and Storage in Colorado prior to shipment by defendant. Bailey's Moving and Storage acted as defendant's agent in connection with packing plaintiff's household goods.

The bill of lading contained an Extraordinary (Unusual) Value Article Declaration stating as follows:

> I acknowledge that I have prepared and retained a copy of the "Inventory of Items Valued in Excess of $100 Per Pound Per Article" that are included in my shipment and that I have given a copy of this inventory to the mover's representatives. I also acknowledge that the mover's liability for loss of or damage to any article valued in excess of $100 per pound will be limited to $100 per pound for each pound of such lost or damaged article (based on actual article weight); not to exceed the declared value of the entire shipment, unless I have specifically identified such articles for which a claim for loss or damage is made on the attached inventory.

When plaintiff's property was packed, plaintiff did not complete an "Inventory of Items Valued in Excess of $100 Per Pound Per Article" because the Bailey's driver, defendant's agent, did not have one available. Plaintiff therefore declined to sign the separate signature block of the "Extraordinary (Unusual) Value Declaration" clause. Defendant's agent, with apparent authority, agreed that the clause would not apply under the circumstances.

The provisions of Tariff 400-N are incorporated by reference into the bill of lading signed by Plaintiff.

Defendant's standard Household Goods Descriptive Inventory ("HGDI") was prepared by Bailey's Moving and Storage and reviewed and signed by Plaintiff on July 2, 2002, July 3, 2002, and July 6, 2002.

The inventory does not list the shotgun or "Geochron" (a combination map and clock) that plaintiff alleges were lost. The inventory, which was received into evidence and interpreted by witnesses without objection, reveals that much of the damage that plaintiff claims in this action to his furniture and household items existed at the time they were packed by defendant's agent in July, 2002. While it does not explicitly mention or list the software CDs that Plaintiff

alleges were lost, it does list a "CD Tower," and plaintiff testified credibly that the CDs in issue were in the "tower," which is enough to bring them within the parties' contract.

Plaintiff's shipment was delivered from Colorado to Bayshore Storage and Transportation in Virginia on July 15, 2002, where it was placed into long-term storage. Bayshore Storage and Transportation acted as Defendant's agent in connection with the storage and delivery of Plaintiff's household goods.

Plaintiff's shipment was removed from long-term storage and delivered to Plaintiff's residence in Haymarket, Virginia on August 29, 2003.  On that day, Plaintiff completed Customer Check-off Sheets wherein he listed certain items as damaged or missing.  On these forms, plaintiff did not list any software CDs, shotgun, or Geochron.

On October 27, 2003, plaintiff submitted, via the Internet, an on-line Statement of Claim to defendant, which included among other things a claim for inventory item number 280, a "Mega CD Tower with software, DVD and audio CDs" in the amount of $8,500.00.

Plaintiff later submitted another written claim for "Software CDs and Licenses," valuing them at $45,028.39.  He never did submit a written claim for the shotgun or the Geochron as required by the tariff.

On January 8, 2004, defendant denied certain items claimed by plaintiff, including the software, the shotgun, the Geochron, and most if not all of the claimed furniture damage.

By letter dated March 29, 2005, defendant provided plaintiff's counsel with information on initiating an arbitration process to address plaintiff's claim.   Plaintiff chose to file this lawsuit against defendant rather than submitting his claim to arbitration.

Plaintiff testified that he purchased most of the software in issue from the original owners of the licenses and media at "swap meets," and offered his own personal estimates as to replacement value. He did not say whether or how he obtained license rights to the various programs, and did not produce any receipts or other documentation in support of his allegation.

Defendant produced credible expert evidence, through Paul Willigan, that the replacement cost of most of the software in issue would be approximately $1,000.00.

The Carmack Amendment governs the liability of motor carriers to shippers who claim loss or damage to shipped property. 49 U.S.C. § 14706. The ICC regulations, 49 C.F.R. § 370 and 49 C.F.R. § 1005, relate to the processing of claims for loss and damage to property transported in interstate commerce by a motor carrier. 49 C.F.R.§ 370; 49 C.F.R. § 1005. Carriers may contractually limit the time within which shippers may file damage claims, provided that the limit is not less than nine months. 49 U.S.C. § 14706(e)(1).

A claim for loss or damage to cargo shall not be voluntarily paid by a carrier unless it is filed with the carrier, in writing, within the specified time limits applicable or as otherwise may be required by law and the terms of the bill of lading or other contract of carriage. 49 C.F.R. § 370.3(a); 49 C.F.R. § 1005.2(a).

Defendant did breach its contract by losing the software and by mishandling some of plaintiff's goods, resulting on some minor damage. Defendant's liability is not limited to $100 per pound for each pound of any such lost or damaged item, based on the actual weight of the item, because defendant's agent, with apparent authority, removed that provision from the contract.

Although plaintiff filed an adequate claim for the software, he failed to file a written claim for the shotgun, Geochron, and other items claimed as lost, and defendant is not liable for those items.

Plaintiff must show that the other items he claimed were lost or damaged in transit had been tendered to the carrier and had been in good condition.  Carraway v. Mayflower Transit, Inc., 36 F. Supp. 2d 262 (E.D.N.C. 1998).  Plaintiff has failed to meet this burden.

Plaintiff did not invoke the alternative dispute resolution procedures and accordingly is not entitled to attorney's fees.  Yakubu v. Atlas Van Lines, 351 F. Supp. 2d 482 (W.D. Va. 2004).

The sum of five thousand dollars ($5,000.00) will fully and fairly compensate plaintiff for the damages he suffered as the result of defendant's breach of contact.

The clerk will enter judgment accordingly.


Alexandria, Virginia
_____/s/_____
July 20, 2005                                               Thomas Rawles Jones, Jr.
                                                            United States Magistrate Judge